403 A.2d 1075.

## Antone D. Silvia vs. Industrial National Bank of Rhode Island.

JULY 5, 1979.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. This civil action involves a dispute between the defendant, Industrial National Bank (Industrial), and one of its depositors, Antone D. Silvia (Silvia), over Industrial's honoring of a check signed by Silvia. The factual aspects of the dispute are unusual, and the controlling law is to be found in an intriguing portion of the Uniform Commercial Code (the Code). Silvia is before us on appeal from a judgment entered in the Superior Court subsequent to a jury-waived trial.

The precipitating cause of this litigation was Silvia's accountant. For more than 25 years, Silvia had entrusted the preparation of his tax returns to an accountant named John J. Mahoney (Mahoney). Each year Mahoney would examine Silvia's financial records, calculate the appropriate tax, fill out the necessary forms, and then fill in the appropriate spaces on the check furnished him by Silvia. Mahoney would then take the completed tax forms and the check to Silvia for his signature. Once Silvia signed the return and the check, Mahoney would forward them to the Internal Revenue Service.

All went well until the time came when Silvia's 1967 taxes became due. Mahoney, apparently in need of some extra cash, decided to take advantage of Silvia's trust. In computing the tax, Mahoney added $7,000 of nonexistent business profits to Silvia's income, thereby raising his client's tax liability from some $2,000 to just over $4,625. On January 13, 1968, Mahoney made out Silvia's check so it was

payable to "Internal Revenue Services"[1] in the amount of $4,625.04. He then met with Silvia and procured his signature on both the tax return and the check. After leaving Silvia, Mahoney proceeded to alter the face of the check by adding in the payee space the words "by John J. Mahoney." Once this was done, the payee appeared to be "Internal Revenue Services by John J. Mahoney."

Mahoney then went to Industrial's Middletown branch, endorsed the back of the check "Internal Revenue Services by John J. Mahoney," and exchanged it for a series of cashier's checks.[2] One of the cashier's checks was made payable to Internal Revenue Service and was in the amount of $2,200.13. Silvia believed that Mahoney may have held onto the check so that, in the event Silvia found out about his accountant's machinations, there would still be enough money to pay the tax. However, in March 1968 Mahoney cashed the Internal Revenue Service check. Bank records indicate that Mahoney endorsed the other cashier's checks and used them to satisfy the claims of some of his creditors. The teller who cashed Silvia's check conceded that he had not asked Mahoney for any proof of his authority to negotiate the instrument before exchanging it for the cashier's checks.

Late in February 1968 Silvia received his monthly bank statement, along with the canceled check in question, but he failed to notice the alteration or the endorsement. More than a year later, in April 1969, Silvia first became aware that something was amiss when the Internal Revenue Service notified him that he had failed to file his 1967 tax return or pay his taxes for that year. Silvia immediately filed his tax return and was forced to pay a penalty in addition to his $2,200 tax liability.

---

[1] It should be noted that Mahoney, for reasons best known only to himself, described the payee as "Internal Revenue Services" rather than Internal Revenue Service. See Appendix.

[2] Admitted into evidence were copies of six cashier's checks totaling $4,085.04. There is nothing in the record which explains what may have happened to the remaining $540.

When Silvia notified Industrial in May of 1969 about its honoring the altered check, Mahoney had died. Silvia then asked Industrial to credit his account for the amount of the improper payment; and when the bank refused, this suit was commenced.

Industrial's defense is based upon one of the Code's provisions that is to be found in G.L. 1956 (1969 Reenactment) §6A-4-406(4), which states:

> "Without regard to care or lack of care of either the customer or the bank a customer who does not within one (1) year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three (3) years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration."

Industrial persuaded the trial justice that the 1-year proviso of §6A-4-406(4) was applicable. Silvia takes the position with us, as he did at the trial level, that the trial justice should have invoked the second, rather than the first, proviso. We disagree.

Obviously, §6A-4-406(4) speaks of unauthorized signatures, alterations on the face or back of the check, and unauthorized endorsements. The litigants apparently concede that the check contains a material alteration on its face and an unauthorized endorsement on its back. Section 6A-3-407(a) defines a "material alteration" as one which

> "changes the contract of any party thereto in any respect, including such change in
>
> (a) the number or relation of the parties; or
>
> (b) an incomplete instrument, by completing it otherwise than as authorized; or
>
> (c) the writing as signed, by adding to it or by removing any part of it."

Clearly, then, the check before us was materially altered when Mahoney added the words "by John J. Mahoney" to the payee space. An unauthorized endorsement, on the other hand, is defined by §6A-1-201(43) as "one made without actual, implied or apparent authority and includes a forgery." Since there is no evidence in the record that Mahoney was authorized by either Silvia or the Internal Revenue Service to endorse the check, the endorsement comes within the statutory definition of "unauthorized."

The crux of Silvia's argument is that although he is precluded from recovery on the material alteration by the 1-year discovery and notice limitation of §6A-4-406(4), he may still recover on the unauthorized endorsement under the 3-year provision of that section. Perhaps the drafters of 6A-4-406(4) did not anticipate a situation in which, as here, an instrument bears both a material alteration and an unauthorized endorsement. Assuming this to be the case, we look to Comment 7 of §6A-4-406, which notes that 4-406 "evidence[s] a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items."

Earlier, in *Fuscellaro* v. *Industrial National Corp.*, 117 R.I. 558, 563, 368 A.2d 1227, 1231 (1977), we pointed out that the underlying purpose of §6A-4-406 appeared to be both to encourage bank customers to discover and report promptly to the bank any irregularities in checks and at the same time to promote the finality of transactions so that some assurance could exist that a negotiable instrument will still retain its negotiability.

The purpose of the "one year"-"three years" distinction is rooted in the duty imposed upon the customer to examine with "reasonable care and promptness" statements of account and their accompanying items which are sent to the

customer by the bank so that the customer may promptly notify the bank of any unauthorized signatures or alterations. Section 6A-4-406(1). A customer is expected to detect an alteration on the face of the instrument more readily than an unauthorized or forged endorsement because he or she is generally not familiar with the signatures of the endorsers. This unfamiliarity accounts for the second proviso's 3-year limitation period.

Here, the alteration and unauthorized endorsement were identical, that is, "Internal Revenue Services by John J. Mahoney." Once the alteration was made, Mahoney could negotiate the check solely through the use of an unauthorized endorsement. Accordingly, discovery of the alteration would have been tantamount to discovery of the unauthorized endorsement. The presence of an altered payee on a canceled check should have automatically alerted Silvia to the existence of the unauthorized endorsement. Since the drafters of §6A-4-406(4) considered 1 year more than sufficient time to discover a material alteration, we cannot allow Silvia to circumvent that policy when, as here, the unauthorized endorsement arises out of and is part of the scheme which caused the alteration.

Section 6A-4-406(4) gave Silvia until the end of February 1969 to discover the payee alteration.[3] Had he looked at the face of the check, he would have known that the instrument also contained an unauthorized endorsement. To allow Silvia to recover on this endorsement after the 1-year period had elapsed would defeat the policies underlying prompt discovery and notice of material alterations. Such a suit is in actuality a suit upon the alteration itself.

Silvia, in seeking support for his position, directs our attention to *Bank of Thomas County* v. *Dekle*, 119 Ga. App.

---

[3]The court in *Pine Bluff National Bank* v. *Kesterson*, 257 Ark. 813, 822, 520 S.W.2d 253, 259 (1975), expressed the view that §6A-4-406 should be classified as an absolute bar rather than a statute of limitations "because it is a rule of substantive law which is a condition precedent to an action."

753, 168 S.E. 2d 834 (1969), a case which we feel is distinguishable from the facts before us. In *Dekle*, a customer sought to recover payments made by a bank on some checks bearing forged signatures of the customer or the endorser and other checks bearing no endorsements. The customer had given the bank timely notice of the deficient endorsements, but not of the forged signatures.[4] The Georgia court held that a customer could maintain an action based on the deficient endorsements despite his failure to make a timely report about the signatures purporting to be those of the customer.

Industrial argues that the *Dekle* court ingored the underlying purpose of §6A-4-406 and that the decision is "clearly erroneous." Although the court did not discuss the policy considerations supporting that provision, we shall not fault its holding in light of our construction of the statute. In *Dekle* the drawer's signature was forged. Here, Silvia's check bears his signature; the name of the payee has been altered. We consider this distinction significant. A forged signature on the face of an instrument does not alert the customer that there is an unauthorized endorsement on the back. In fact, the endorsement on a check bearing a forged drawer's signature may not necessarily be unauthorized. However, when the identity of the intended payee is changed, the instrument can only be negotiated upon an unauthorized endorsement.

Accordingly, customers having checking accounts must do something more than see if their monthly statement of account shows a positive balance. It may be to their benefit to check both sides of the canceled checks. If the bank returns

---

[4]Under Georgia law, the time limits are significantly shorter. A customer is given 60 days to discover and report unauthorized signatures or alterations on the face of an item and 1 year to discover and report any alteration or unauthorized endorsement on the back of the instrument. Ga. Code Ann. §109A-4-406(4)(a)(b). Note that this statute, unlike our own, distinguishes between alterations on the face of the instrument and alterations on the back. Under §6A-4-406(4) alterations, whether on the front or back, are subject to the shorter discovery and notice limitation. The *Dekle* decision was cited with apparent approval by the same court in *Georgia Motor Club, Inc.* v. *First National Bank & Trust Co.*, 137 Ga. App. 521, 523, 224 S.E.2d 498, 500 (1976).

a canceled check bearing the name of a payee other than the intended one, the customer should know that the endorsement is improper. Any action brought upon such an instrument is in fact grounded upon the alteration rather than the endorsement. For this reason we hold that when a bank returns to a customer a check bearing an alteration of a named payee, as well as an unauthorized endorsement, the first proviso of §6A-4-406(4) of the Code becomes applicable so that the customer, in order to preserve his rights against the bank, has but 1 year to discover and report the impropriety.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Gregory F. Fater*, for plaintiff.

*Hinckley, Allen, Salisbury & Parsons, Paul V. Curcio, Richard M. Loomis*, for defendant.