# 600          428 Mass. 600 (1998)

Arkwright Mutual Insurance Company v. State Street Bank & Trust Company.

ARKWRIGHT MUTUAL INSURANCE COMPANY vs. STATE STREET
BANK & TRUST COMPANY & another.[1]

Suffolk. October 8, 1998. - December 23, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Bank. Negotiable Instruments,* Indorsement. *Notice. Uniform Commercial Code,* Notice. *Statute,* Construction.

Unsigned ("for deposit only") or missing indorsements on certain checks fall within the ambit of G. L. c. 106, § 4-406 (4), as in effect before amendment in 1998, so that, where the drawer of the checks did not notify two banks of irregularity in those indorsements on the checks within the three-year time limit prescribed in the statute, the banks were entitled to summary judgment on claims alleging the banks' negligence and asserting that the indorsements were fraudulent [602-604]; further, the discovery rule was inapplicable inasmuch as the statute supplants common-law claims [604-606].

CIVIL ACTION commenced in the Superior Court Department on September 16, 1994.

The case was heard by *Charles F. Barrett,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Andrew F. Caplan* for the plaintiff.

*William A. Worth* for the defendants.

LYNCH, J. At the close of the evidence in a bench trial a Superior Court judge allowed the defendants' motion to dismiss under Mass. R. Civ. P. 41 (b) (2), 365 Mass. 803 (1974).[2] The

---

[1]BayBank Boston, N.A.

[2]Rule 41 (b) (2) of the Massachusetts Rules of Civil Procedure, 365 Mass. 803 (1974), states in relevant part: "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

plaintiff filed a timely appeal, and we took the case here on our own motion. We now affirm.[3]

The judge made no findings of fact, but considered the uncontroverted evidence and the inferences to be drawn therefrom in the plaintiff's favor. The evidence considered in this manner reveals the following: From approximately 1976 to 1991, The Beacon Companies (Beacon) employed Janet Ciulewicz as secretary to two Beacon executives (payees). As part of her duties, Ciulewicz was charged with preparing the payees' expense reports and depositing their expense reimbursement checks in their bank accounts. Beacon drew these checks on its account with the defendant State Street Bank & Trust Company (State Street).

From 1985 to 1991, Ciulewicz diverted 124 reimbursement checks totaling $124,282.76, by depositing them in her own account with the defendant BayBank Boston (BayBank). Ciulewicz wrote on the back of most of these checks "for deposit only." On some she forged the signature on the back. It would appear from the record that she deposited two checks without any indorsement.

Beacon received monthly bank statements from State Street, containing approximately 5,000 checks, which it then "spot checked" for improper indorsements.

Ciulewicz's scheme was not discovered until she confessed. Following her confession, Beacon reimbursed the payees in the amount of the diverted funds and filed a claim with the plaintiff under an employee theft policy. As subrogee to Beacon's interest, the plaintiff brought an action on September 16, 1994, alleging that BayBank (depository bank) and State Street (drawee bank) were negligent in paying funds to Ciulewicz on the basis of these misappropriated checks and debiting Beacon's account.

The judge allowed the defendants' motion to dismiss on the ground that the claim was time-barred by the three-year tort statute of limitations or, alternatively, by the substantive provisions of the Uniform Commercial Code (UCC). In so ruling, the judge rejected the plaintiff's contentions that (1) because

---

[3]Although the parties have not briefed the issue, under *Stone & Webster Eng'g Corp.* v. *First Nat'l Bank & Trust Co.*, 345 Mass. 1, 10 (1962), a drawer has no cause of action against a collecting bank. This conclusion, in conjunction with our conclusion that the Uniform Commercial Code supplants common-law negligence principles, stands for the proposition that BayBank is not a proper party to this action.

Ciulewicz did not sign the payees' names to many of the checks, there were no "unauthorized indorsements" within the scope of the three-year notice requirement in § 4-406 (4) of the UCC; (2) art. 4 of the UCC does not apply to common-law negligence actions; and (3) under common-law negligence principles, the discovery rule tolled the applicable limitations period.

1. *Effect of G. L. c. 106, § 4-406 (4).* On May 13, 1998, a revised version of G. L. c. 106, § 4-406, became effective. See St. 1998, c. 24, § 8. This case arose before those revisions took effect. The earlier version stated in relevant part:

> "Without regard to care or lack of care of either the customer or the bank a customer who does not within one · year from the time the statement and items are made available to the customer . . . discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration."

G. L. c. 106, § 4-406 (4). The earlier statute, therefore, precludes bank liability where the claimant fails to notify the bank within the relevant time period. *Jensen* v. *Essexbank*, 396 Mass. 65 (1985). To avoid the preclusive effect of that statute, the plaintiff first contends that many of the checks at issue lacked indorsements, because they contained either nothing on the back, or were marked "for deposit only" with no accompanying signature or bank account number. Thus, under the plaintiff's analysis, missing indorsements fall outside the scope of G. L. c. 106, § 4-406 (4), which requires notice only where there is an "unauthorized indorsement." We disagree.

We begin with the statutory definition of "unauthorized indorsement" found in G. L. c. 106, § 1-201 (43): " 'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery." We note further G. L. c. 106, § 1-102, which provides in relevant part:

> "(1) This chapter shall be liberally construed and applied to promote its underlying purposes and policies.

> "(2) Underlying purposes and policies of this chapter are

"(*a*) to simplify, clarify and modernize the law governing commercial transactions;

"(*b*) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"(*c*) to make uniform the law among the various jurisdictions." ·

In construing G. L. c. 106, § 4-406 (4), in the manner most consonant with these policy goals, we have no hesitancy in concluding the phrase "for deposit only" constitutes an indorsement, as does the signature on the back of the check by someone who is not the payee. See G. L. c. 106, § 3-204 (2) ("An indorsement in blank specifies no particular indorsee, and *may* consist of a mere signature" [emphasis supplied]); G. L. c. 106, § 3-205 ("An indorsement is restrictive which . . . includes the words . . . 'for deposit' "); *Kuwait Airways Corp.* v. *American Sec. Bank, N.A.,* 890 F.2d 456, 463 & n.12 (D.C. Cir. 1989) (missing indorsement within scope of UCC § 3-406); *Chilson* v. *Capital Bank,* 237 Kan. 442, 445 (1985) (concluding that payment on missing indorsement is same as payment on forged indorsement and applying same standard); *Tonelli* v. *Chase Manhattan Bank, N.A.,* 41 N.Y.2d 667, 670 (1977) (analogizing missing indorsement to forged indorsement and noting that "[t]he same rule should prevail where a bank honors a check payable to order which lacks the indorsement of the payee"). That two of the checks contained no indorsement at all does not require that they be treated differently because the funds passed into the depositor's account in a manner that was clearly unauthorized.

The official comment accompanying § 4-406 (4) illustrates that the drafters were primarily concerned with finality in check fraud litigation:

"[S]ubsection (4) places an absolute time limit on the right of a customer to make claim for payment of altered or forged paper without regard to care or lack of care of either the customer or the bank. In the case of alteration or the unauthorized signature of the customer himself the absolute time limit is one year. In the case of unauthorized indorsements it is three years. This recognizes that there is little excuse for a customer not detecting an alteration of

his own check or a forgery of his own signature. However, he does not know the signatures of indorsers and may be delayed in learning that indorsements are forged. *The three year absolute time limit on the discovery of forged indorsements should be ample, because in the great preponderance of cases the customer will learn of the forged indorsements within this time and if in any exceptional case he does not, the balance in favor of a mechanical termination of the liability of the bank outweighs what few residuary risks the customer may still have*" (emphasis added).

Official Comment to § 4-406 (4), 2B U.L.A. 400-401 (Master ed. 1991). The italicized language applies with equal force where an indorsement is missing, or the check contains the blank restrictive indorsement "for deposit only" because the policy behind a mechanical termination of liability applies in each of those instances.

Certainly Beacon, as the payees' employer, had a better opportunity to determine whether the payees had received the funds than the defendants. We think this is precisely the kind of case the drafters had in mind when they noted that, in those exceptional cases where a drawer does not discover the irregular indorsement in time to give proper notice, "the balance in favor of a mechanical termination of the liability of the bank outweighs what few residuary risks the customer may still have." We therefore conclude that unsigned and missing indorsements such as these are within the ambit of G. L. c. 106, § 4-406 (4).

2. *Effect of UCC on the plaintiff's common-law negligence theory.* The plaintiff next argues that G. L. c. 106, § 4-406, does not apply to a common-law negligence action, but rather governs only claims arising under the UCC. In support of this position, the plaintiff cites G. L. c. 106, § 1-103, which states:

"Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

The plaintiff thus asserts that, because common-law negligence

supplements rather than is supplanted by the UCC, the tort statute of limitations applies and does not begin to run until the plaintiff knew or should have known of the grounds for complaint. This assertion ignores the strong policy of commercial finality and the rules of liberal construction discussed above.

This is not an issue of first impression. In *Jensen* v. *Essexbank, supra* at 66-67, we rejected a similar attempt at circumventing G. L. c. 106, § 4-406 (4), albeit in the context of a drawer's unauthorized signature (as opposed to an indorsement). There we stated, "It is not open to the plaintiff to demonstrate negligence on the part of the bank. . . . The one-year period in § 4-406 (4) is not a statute of limitations which might not start to run until the plaintiff knew or should have known of his attorney's treachery. . . . It necessarily follows that the plaintiff's claims in contract and in negligence must fail."

The United States Court of Appeals for the Eighth Circuit, applying Massachusetts law, concluded that *Jensen* v. *Essexbank, supra,* compelled dismissal under G. L. c. 106, § 4-406 (4), despite the fact that the plaintiffs in that case asserted only common-law causes of action. *Wetherill* v. *Putnam Invs.,* 122 F.3d 554, 558 (8th Cir. 1997). The court reasoned that G. L. c. 106, § 4-406 (4), states in broad terms that a bank customer in such circumstances "is precluded from asserting against the bank [an] unauthorized signature." Conspicuously absent from this proscription is any language limiting preclusion to actions arising under the UCC. Thus, the court concluded that G. L. c. 106, § 4-406 (4), bars the bank's liability regardless of the theory on which the plaintiff relies.

Although at least one court has permitted a recovery on a negligence claim in such circumstances, see, e.g., *Sun 'n Sand, Inc.* v. *United Cal. Bank,* 21 Cal. 3d 671 (1978), we note that commentators have soundly criticized this approach. See 2 T.D. Crandall, M.J. Herbert & L. Lawrence, Uniform Commercial Code § 17.14.2, at 17:210-17:211 (1996) ("Notwithstanding what appears to be its clear intent, some courts have held that a drawer can circumvent the preclusion of § 4-406 [4] by maintaining a cause of action for common law negligence against the payor bank. . . . It is not clear that these courts have properly weighed all of the relevant factors before reaching their decisions, however. Section 4-406 [4] was a conscious

balancing of interests. A court should go very slowly when it seeks to reassess the propriety of such a balance"). See also 2 J.J. White & R.S. Summers, Uniform Commercial Code 280-281 (4th ed. 1995) (commenting on limitations period applicable to indorsement grievances under revised art. 4: "If [contrary to our inclination] courts find that the cause of action did not 'accrue' until a customer discovered or should have discovered the embezzlement, the clock might have started to tick well after the statement was made available to the customer"). Accordingly, we continue to adhere to the position expressed in *Jensen* v. *Essexbank, supra,* that the UCC supplants common-law negligence in cases such as this one. Because of our conclusion, it necessarily follows that the discovery rule is also inapplicable, and the plaintiff's action fails for lack of timely notice.

*Judgment affirmed.*