PITTMAN, Judge.
Absolute Drug Detection Services, Inc. (“ADDS”), and Chauncey Thuss, Jr. (“Thuss”), the owner of ADDS, appeal from a summary judgment in favor of Regions Bank (“Regions”) and Nisa Jordan (“Jordan”), an employee of Regions.
This action arises out of allegedly unauthorized transactions that occurred involving bank accounts ADDS had with Regions. ADDS and Thuss filed the action in May 2009, naming as defendants Regions, Jordan, Eric Reed (“Reed”), Adrienne Reed d/b/a Jeffco Chem-Dry, Sprint Communications, and Eric Reed d/b/a Analytical Testing Group. Against Regions and Jordan, ADDS and Thuss asserted claims of negligence, “willfulness,” and wantonness; additionally, they stated a breach-of-contract claim against Regions only. ADDS and Thuss alleged that Regions and Jordan had improperly permitted Reed to execute transactions that had not been au *1164 thorized by Thuss and to become a signatory on ADDS’s bank accounts.
In August 2011, all defendants filed summary-judgment motions. ADDS and Thuss responded in opposition to those motions, and a hearing on the motions was held on October 4, 2011. On October 12, 2011, the trial court entered a partial summary judgment in favor of Regions and Jordan, but it denied the motions of the other defendants. Regions and Jordan thereafter filed motions for the entry of a Rule 54(b), Ala. R. Civ. P., certification of the partial summary judgment as a final judgment as to the claims asserted against them, which the trial court granted on November 14, 2011. ADDS and Thuss timely appealed; the appeal was transferred by the supreme court to this court pursuant to Ala.Code 1975, § 12-2-7(6).
The record reveals the following undisputed facts. ADDS is a corporation located in Birmingham that provides drug testing and related services for its clients. Thuss is the owner of ADDS; at all relevant times, Reed was the business manager for ADDS. ADDS had two bank accounts with Regions: a checking account and a money-market account. Jordan was the branch operations manager at the Regions Southside branch location, where ADDS conducted most of its transactions.
The deposit agreement entered into by Thuss, on behalf of ADDS, and Regions provided:
“If you discover an unauthorized payment or other discrepancy, you must promptly notify us in writing of the relevant facts. Your report must identify the specific time or debits that you are challenging.
“If you fail to comply with your duty to examine your statements and account activity and report errors, discrepancies and unauthorized transactions, in addition to any and all other rights and remedies available to us, we shall have the defenses contained in § 4-406(d) of the Uniform Commercial Code (UCC) ... In addition, if your claim involves a series of items containing unauthorized signatures or alterations by the same wrongdoer, you shall be precluded from asserting against us any unauthorized signature or alteration by the same wrongdoer on any item paid in good faith on or after 10 calendar days after the first statement describing the first altered or unauthorized item was sent or made available to you ....

“Without regard to the care or lack of care of either you or us, if you fail within 30 calendar days after the statement or item is sent or made available to discover and report with respect to an item (i) your unauthorized signature, or (ii) any unauthorized or missing endorsement, or (in) any alteration on an item, you shall be precluded from asserting against us the unauthorized signature, the unauthorized or missing endorsement or alteration on that item. This absolute preclusion applies (i) to each item that you fail to report within 30 calendar days and (ii) regardless of the legal theory you assert. By this provision, you and we intend to shorten the absolute statutory preclusion period for unauthorized signatures and alterations specified in § J)-h06(f) of the UCC and to establish a contractual condition precedent for reporting claims involving unauthorized or missing endorsements.

“Except for transactions covered by the Electronic Funds Transfer Act or unauthorized debits involving Substitute Checks, you must report any other problems with your account within 30 calendar days of the date we send or make available the statement or items, failing which you will be precluded from assert *1165 ing the problems against us, even if we fail to exercise ordinary care.”
(Emphasis added.)
The deposit agreement also imposed the burden of reporting unauthorized fund-transfer payments within 30 calendar days of the mailing of monthly statements, which listed the transfers of funds, including wire transfers; the agreement stated that if ADDS failed to report any unauthorized transactions or other discrepancies, the transfers were deemed authorized after the 30 days had elapsed.
Reed held all bookkeeping responsibilities at ADDS and did not answer or report to a superior; thus, no one checked Reed’s work. One of those responsibilities was to review ADDS’s monthly bank statements and to check, and then report, unauthorized transactions and discrepancies. Additionally, Thuss had entrusted Reed with his signature stamp for Reed to use when necessary. The deposit agreement also addressed the use of a signature stamp:
“Since we have no way of determining the validity of checks or other written orders bearing facsimile signatures, which includes the use of a signature stamp, [ADDS] hereby release[s] the Bank from any liability for unauthorized use of any facsimile signature device.”
Thuss was the only authorized person whose name was listed as a signatory for ADDS’s bank accounts. Reed was never authorized as a signatory on the accounts, never directed by Thuss to be so listed, and, with the exception of a few specific occasions, never authorized to withdraw funds from either of ADDS’s accounts. The record establishes that a person must be listed as a signatory on an account to be permitted to withdraw money from that account. Further, Regions required that, in order to add a new signatory on an account, the existing signatory must authorize the addition of the new signatory either by coming to the bank in person or by having the new signatory sign a signatory card in the presence of a notary. The record reveals that Reed was added as a new signatory on the ADDS accounts on September 12, 2008, but that the addition of Reed’s name as a signatory on the accounts was not authorized by Thuss; Thuss did not go to the bank on that date and did not provide a notarized signature to authorize Reed’s addition; though the stamp of Thuss’s signature does appear from the record to have been affixed on one of the pertinent documents, the signature was not notarized.
In September 2008, the record reveals, Thuss became concerned about the financial situation of ADDS when some of the laboratories used by ADDS refused to release test results because those laboratories had not been paid by ADDS for previous work performed. In a letter dated December 22, 2008, to Regions, Thuss stated:
“Looking at the September [2008] statement it appears total deposits of $20,369.00 were made. There were two wire transfers total $3,050.00 which appears to go to two labs. There was also a bank debit for $2,000.00 but I cannot tell where it went or what it was for. Interestingly enough, it occurred on September 12, 2008, the same day the signature card was changed by Eric [Reed] and Nisa Jordan.”
The second time Thuss informed Regions of unauthorized activity on the ADDS account statements was in May 2010 in a list of allegedly unauthorized transactions involving the ADDS checking account. That was the first time ADDS and Thuss raised any concern regarding transactions involving the ADDS checking account. Lists that were compiled and disclosed by ADDS and Thuss during discovery reflected purported unauthorized *1166 transactions from May 2007 to December 2007 and from January 2008 through September 2008; approximately 176 of the 239 transactions listed as unauthorized were transactions executed by Reed’s use of Thuss’s signatory stamp, while the remainder were transactions drawn from ADDS’s checking account.
The trial court, in its judgment, stated that the claims asserted by ADDS and Thuss against Regions and Jordan were barred by Ala.Code 1975, § 7-4-406(d) and (f) and § 7-4A-505, as well as by the deposit agreement entered into by Regions and ADDS.[1] On appeal, ADDS and Thuss assert that the trial court erred in entering a summary judgment in favor of Regions and Jordan because, ADDS and Thuss assert, they presented evidence sufficient to present a general issue of material fact as to whether Regions and Jordan acted in good faith and exercised ordinary care in processing the transactions claimed to be improper; they assert that the trial court ignored Ala.Code 1975, § 7-4-406(e), which, they contend, states that § 7-4-406(d) and (f) do not apply in situations in which the bank did not pay in good faith and, additionally, that the bar set forth in § 7 — 4—406(d) does not automatically apply when there is evidence indicating that the bank failed to exercise ordinary care in paying an item and such failure contributed to a loss.
It is well settled that an appellate court reviews a summary judgment de novo, using the same standard applied by the trial court. Neal v. Sem Ray, Inc., 68 So.3d 194, 196 (Ala.Civ.App.2011). Under Rule 56(c), Ala. R. Civ. P., we must review the evidence to determine whether the movant established that no genuine issue of material fact existed, thereby entitling the mov-ant to a judgment as a matter of law. If the movant makes that showing, the non-movant thereafter bears the burden to adduce “substantial evidence” to rebut the movant’s showing that there is no genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin Cnty., 538 So.2d 794, 797-98 (Ala.1989). “[Sjubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). We apply the de novo standard of review to each issue raised in the present appeal.
This case turns on the applicability of the statutory bars asserted by Regions and Jordan, which in turn depend on the timing of the reports made by ADDS and Thuss to Regions of unauthorized activity on ADDS’s accounts. Under Ala.Code 1975, § 7-4-406(0, a customer has a strict 180-day period within which to report suspected unauthorized transactions; the deposit agreement, however, expressly shortens the period to 30 calendar days.[2] Critically, § 7-4-406(0 applies expressly without regard to the care exercised by the bank. Therefore, according to the deposit agreement and § 7-4-406(0, when read together, the failure of ADDS to report any unauthorized transaction after the lapse of 30 days of having received the *1167 monthly account statement reflecting those transactions absolutely bars any claims ADDS might otherwise have asserted against Regions based on those allegedly unauthorized transactions. Additionally, unauthorized wire transfers must be reported within one year of a customer’s receiving notice sufficient to have compelled the customer to report the unauthorized transaction under Ala.Code 1975, § 7-4A-505. That statute applies to transfers of funds, including wire transfers, and operates as a complete rule of repose in favor of the bank after one year has passed from the customer’s having been notified of a questionable transaction.
ADDS and Thuss, in their brief to this court, argue in detail that the statutory bars of §§ 7-4-406(d) and 7-4A-505 are inapplicable, citing evidence that Jordan acted in bad faith because she processed the transactions despite knowing that only Thuss was an authorized signatory on the accounts.[3] Jordan’s failure to make sure that Reed was authorized as a signatory on the accounts is the only evidence to which ADDS and Thuss point as demonstrative of Jordan’s alleged bad faith. Jordan’s (alleged) culpability, however, is negated by Thuss’s actions; because Reed had Thuss’s signature stamp, it was reasonable for Jordan to permit him to conduct the transactions. In other words, any additional culpability on Jordan’s part for having allowed Reed to conduct the transactions is negated by the undisputed fact that Thuss had entrusted, ostensibly with no accountability, his signature stamp to Reed for Reed to use at his discretion. Moreover, it is undisputed that Thuss did not review the monthly bank statements and that he delegated to Reed the responsibility of identifying and reporting unauthorized transactions and other discrepancies.
The terms of the deposit agreement clearly reflect that Regions presumes that when another person possesses the signature stamp of a customer, that person possesses the stamp as an agent of the customer. It follows that the strict language of the provision in the deposit agreement limiting Regions’ liability based on the unauthorized use of a signature stamp is intended to emphasize the authority vested in a person who possesses the stamp and, in turn, the diligence expected of a customer to guard against misuse of the stamp. The terms implicitly but unquestionably iterate the need to monitor the use of a signature stamp when a customer has entrusted it to be used at the discretion of an agent of the customer. The deposit agreement requires precisely the level of diligence that would have protected ADDS and Regions against the scheme allegedly implemented by Reed in this case. The requirement that unauthorized transactions be reported at the first opportunity and the presumption placed upon the use of a signature stamp were included in the deposit agreement as safeguards to protect Regions and ADDS against loss.
ADDS and Thuss argue that § 7-4-406(d) is the statutory bar that, under different circumstances, would be applicable here, but, they assert, Jordan acted in bad faith by allowing Reed to conduct transactions and, therefore, that they are not be barred from asserting claims against Regions and Jordan. Aside from *1168 the general authority of § 7-4-406(d), which bars claims against a bank only so long as the bank has not acted in bad faith, ADDS and Thuss do not cite any statute or caselaw to support the notion that Jordan’s conduct was sufficient so as to foreclose application of § 7-4-406(d). If we consider, in isolation and in a light most favorable to them, ADDS and Thuss’s argument that Jordan erred by allowing Reed to execute transactions while Reed was not authorized as a signatory on the accounts, Jordan’s conduct, at most, demonstrated that she may have failed to exercise ordinary care in conducting everyday business; her actions certainly did not rise to the level of bad faith, especially in light of Thuss’s shortfalls and the aforementioned effect his shortfalls had on negating Jordan’s culpability.
This case comes down to a question of deadlines. After receiving the monthly account statement for each account, ADDS was required to report any unauthorized transactions listed in that account statement within 30 calendar days pursuant to the terms agreed upon in the deposit agreement and without regard to Regions’ exercise of reasonable care, or failure to exercise reasonable care, as expressed in § 7-4-406(f). ADDS and Thuss reported unauthorized activity on two occasions: in December 2008 and in May 2010. As to the claims based on the activity reported in May 2010, under Ala.Code 1975, § 7-4-406(f), those claims were barred because the activity was made known to ADDS and Thuss in account statements in 2007 and 2008. To the extent that the activity reported at that time included wire transfers, those claims were barred under Ala. Code 1975, § 7-4A-505.
Next, we address the validity of claims based on the unauthorized-activity report in Thuss’s letter to Regions in December 2008. In that letter, Thuss mentioned three transactions but only raised concerns as to one of those transactions: a bank debit that had taken place in September 2008. However, those transactions were not reported within the 30-day reporting period and, thus, were not timely asserted. Thuss fell short of fulfilling his responsibilities as the signatory on ADDS’s accounts, and his failure to exercise the diligence required by the deposit agreement effectively disabled the safeguards contemplated by the terms of the agreement and, instead, only helped perpetuate Reed’s alleged wrongdoing; had Thuss complied with the terms of the deposit agreement, any loss resulting from Reed’s alleged wrongdoing would have been mitigated.
AFFIRMED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The record, pursuant to Rule 10(f), Ala. R.App. P., has been supplemented with a copy of the trial court’s partial-summary-judgment order entered in favor of Regions and Jordan.

. The trial court’s judgment was based on its interpretation of the deposit agreement and the statutory provisions together. Though ADDS and Thuss did not challenge the terms of the deposit agreement or whether the time limits set forth in the statutes may be modified by the deposit agreement, we nonetheless acknowledge that the parties were free to contractually modify the statutory time limits pursuant to Ala.Code 1975, §§ 7-1-302 and 7-4A-501.

. In their brief, ADDS and Thuss also assert that Regions and Jordan permitted Reed to deposit payments addressed to ADDS and Thuss in other, personal accounts belonging to Reed. However, claims grounded upon such unauthorized activity were not asserted in the complaint, and, thus, arguments as to such claims are not properly before us in this appeal.