NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1119                                        Appeals Court

GERALD VALENTE, executor,[1] and trustee,[2] vs.  TD BANK, N.A.[3]


No. 16-P-1119.

Worcester.     March 3, 2017. - August 30, 2017.

Present:  Agnes, Kinder, & Shin, JJ.


Bank.  Negligence, Bank.  Notice, Timeliness.  Uniform
    Commercial Code, Bank, Notice, Payment on negotiable
    instrument.  Negotiable Instruments, Payment.



    Civil action commenced in the Superior Court Department on
October 25, 2011.

    The case was heard by Daniel M. Wrenn, J., on a motion for
summary judgment.


    Barry A. Bachrach for the plaintiff.
    Catherine R. Connors for the defendant.


    AGNES, J.  Before a bank customer may sue his bank for

honoring a check drawn on his account that bears an

_____

        [1] Of the estate of Mauro Valente.

        [2] Of the Valente Family Trust.

        [3] Formerly known as TD Banknorth.

"unauthorized signature or alteration," Massachusetts law requires that the customer notify the bank of the matter within one year after a statement of the account showing the item that was paid is made available to him.  G. L. c. 106, § 4-406(f), as appearing in St. 1998, c. 24, § 8.[4]  In the present case, the plaintiff, Gerald Valente, in his capacity as the executor of the estate of Mauro Valente (decedent or Mauro) and as trustee of the Valente Family Trust, brought suit against the decedent's widow, Donna Valente,[5] and her daughter, Lillianna Saari, alleging that they wrongfully misappropriated substantial sums of money from the decedent's estate and a family trust that were on deposit in TD Bank, N.A. (bank).  In the same action, in the only count in the complaint against the bank, the plaintiff alleged that the bank was negligent and thereby liable for

_____

[4] General Laws c. 106, § 4-406(f), as appearing in St. 1998, c. 24, § 8 is part of the Uniform Commercial Code, as adopted and codified by Massachusetts, and provides as follows:

"Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection [a]) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.  If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under section 4-208 with respect to the unauthorized signature or alteration to which the preclusion applies."

[5] As the decedent and Donna share a last name, we refer to each by his or her first name.

damages because it was aware of the wrongful conduct by the decedent's widow.  For substantially the same reasons given by the Superior Court judge below, who allowed the bank's motion for summary judgment in a thoughtful and comprehensive memorandum of decision, we hold that the one-year notice requirement set forth in G. L. c. 106, § 4-406(f), bars a customer's lawsuit against his bank for honoring a check with a forgery of the customer's signature despite an allegation that the bank had actual knowledge of the forgery.[6]

Background.  The essential facts material to the outcome in this case are not in dispute.  The following account is drawn from the materials submitted by the plaintiff and the bank in connection with the bank's motion for summary judgment.  Mauro and Donna were married in 2000.  They remained married until Mauro's death in March, 2011.  Mauro maintained five accounts with the bank:  two accounts in his name alone, two accounts in the name of the Valente Family Trust, and one account in the name of his business, Valente Construction, Inc.  In addition, in November, 2007, Mauro and Donna went to the bank and opened a

---

[6] On November 5, 2014, following a jury-waived trial before a different judge, the plaintiff obtained a judgment against Donna and Saari.  The plaintiff then filed a notice of appeal limited to challenging the summary judgment as to the one count against the bank.  Although Donna and Saari appealed the judgment, their appeals were dismissed for noncompliance with Mass.R.A.P. 9(c)(2), as amended, 437 Mass. 1602 (2002).  The plaintiff's appeal is therefore what is before this court.

joint account with both of their names on the account. Mauro was the only authorized signatory on all accounts except for the joint account, on which Donna was also a signatory. When Mauro opened those accounts, he acknowledged receipt of the rules and regulations issued by the bank that specifically require customers to review their account statements and to notify the bank as soon as possible "if [they] believe there is an error, forgery or other problem with the information shown on [their] Account statement." The bank sent monthly statements for all of Mauro's accounts and for the joint account to his home address in Worcester. There is no dispute that Mauro did not notify the bank within one year after the monthly account statements were mailed to him regarding specific items that contained unauthorized or forged signatures. At the earliest, the plaintiff gave notice to the bank of the allegedly unauthorized transactions in October, 2011, when the complaint in this case was filed.

There is evidence in the record that Mauro suffered progressive memory loss from late 2006 through early 2008. In December, 2007, due to his failing health, Mauro executed a durable power of attorney (POA) that appointed Donna as his attorney-in-fact.[7] The POA granted Donna "full power to act for

---

[7] We note that the durable power of attorney given to Donna was done pursuant to G. L. c. 201B, § 2, which subsequently was

[Mauro] in all matters affecting [his] business, property, rights and interests." It also allowed Donna to "draw checks or drafts upon, or otherwise withdraw funds from, any checking, savings or other bank accounts belonging to [Mauro]." Donna contends that she provided a copy of the POA to the bank in or about June, 2009, after Mauro had suffered a stroke.

The core of the plaintiff's allegations of negligence on the part of the bank relates to events that occurred between November, 2007, when Mauro and Donna opened a joint account at the bank, and March, 2011, by which time Donna had transferred nearly $2 million from Mauro's individual accounts into their joint account, and then further transferred that money (and more) from the joint account into her individual account. It was not until after Mauro's death in March, 2011, that the plaintiff discovered evidence of those transactions.

On October 25, 2011, the plaintiff filed the complaint. In the sole count against the bank, the plaintiff alleges that the bank knew or should have known of Donna's misappropriation of

repealed, see St. 2008, c. 521, § 22, and replaced by G. L. c. 190B, § 5-502. See St. 2008, c. 521, § 9. A durable power of attorney can authorize an agent to make a wide range of decisions affecting the principal's business, estate, finances, and legal relationships. See G. L. c. 190B, § 5-502, as appearing in St. 2008, c. 521, § 9 ("All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his successors in interest as if the principal were competent and not disabled").

Mauro's funds, and that by failing to act or otherwise prevent Donna from withdrawing the funds, the bank breached the duty of care it owed to Mauro.  The record contains canceled checks drawn on Mauro's accounts for substantial amounts during the relevant period, which were made out to "Cash" and deposited in Donna's personal account.[8]  The record also contains canceled checks from Mauro's and Donna's joint account that Donna signed and then deposited into her personal account at the bank.  Two of the checks from the joint account, numbered 204 and 205, which are attached to the plaintiff's complaint, are dated less than one year before the filing of the complaint.  No checks that are alleged to be unauthorized and that are from the other accounts are attached to the complaint.

The plaintiff also presented evidence regarding the bank's fraud detection policies.  During the period in dispute, the bank's fraud detection software generated thirty-seven individual alerts of possible fraud in connection with the joint account and Donna's personal account.  Pursuant to the bank's policies, each time an alert is generated, it is required to be investigated by a bank analyst.  After investigating one such alert in October, 2010, a bank manager contacted Worcester elder services to report potential elder abuse of Mauro, but no

---

[8] Some of those checks bear the signature "Mauro Valente" and one bears Donna's name with "POA" written after the signature.

further action was taken by the bank.  In addition, in an affidavit, a financial consultant engaged by the plaintiff opined that had the bank followed bank policies and industry standards, the matter would have been referred to the bank's corporate security department, which would have prevented further misappropriations.  The consultant further stated that by not doing so, the bank's employees "actively facilitated" Donna's misappropriations of Mauro's funds.

Discussion.  On appeal, our review of a summary judgment is de novo.  See Federal Natl. Mort. Assn. v. Hendricks, 463 Mass. 635, 637 (2012).  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715-716 (1991).  A party seeking summary judgment may satisfy his burden of demonstrating the absence of triable issues by submitting affirmative evidence demonstrating the opposing party's lack of entitlement to relief, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case.  See id. at 716; Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).  An opposing party cannot defeat a motion for summary judgment by resting on his pleadings and making mere assertions of disputed facts.  LaLonde v.

Eissner, 405 Mass. 207, 209 (1989).  If the moving party establishes the absence of a triable issue, the opposing party must set forth specific facts showing that there is a genuine issue for trial.  Kourouvacilis, supra.

When the Uniform Commercial Code (UCC) was adopted in Massachusetts in 1957, G. L. c. 106, § 4-406(4), inserted by St. 1957, c. 765, § 1, provided that "[w]ithout regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration."[9]  See Stone & Webster Engr. Corp. v. First Natl. Bank & Trust Co. of Greenfield, 345 Mass. 1, 9 n.2 (1962).  In Jensen v. Essexbank, 396 Mass. 65, 65-66 (1985), the court considered the applicability of § 4-406(4) in the context of a dispute between a bank customer and his bank over the bank's payment of checks drawn on the customer's account, made payable to the customer's

_____

[9] In 1998, § 4-406(4) was restyled as § 4-406(f).  See St. 1998, c. 24, § 8.  Other than removing the three-year reporting period for unauthorized indorsements, the language of § 4-406(f) relevant to this opinion is identical to that of § 4-406(4).

attorney, and bearing the attorney's forgery of the customer's signature. The facts indicated that prior to the forgeries, the customer made arrangements with his bank for the account statements to be delivered to his attorney. Ibid. Because the bank was not notified of the forgeries within one year of the account statements being made available to the customer, the court held that the customer could not proceed against his bank for negligence. Id. at 66-67. The court explained that "[t]he one-year period in § 4-406(4) is not a statute of limitations which might not start to run until the plaintiff knew or should have known of his attorney's treachery, as the plaintiff argues. It is a statutory prerequisite of notice." Jensen, supra at 66.

In Arkwright Mut. Ins. Co. v. State St. Bank & Trust Co., 428 Mass. 600 (1998) (Arkwright), the court reaffirmed its reasoning in Jensen. In Arkwright, supra at 601, a secretary charged by her employer with processing expense reports for two other employees and depositing the reimbursement checks in the employees' bank accounts, diverted the reimbursement funds into her own personal account by forging the payees' signatures, among other things. The employer regularly received account statements from its bank, but did not discover the illegal scheme until years later after almost $125,000 had been diverted by the secretary into her personal bank account. Ibid.

In Arkwright, the court specifically stated that the prerequisite of notice under § 4-406(4) was not limited to claims that arise under the UCC, but applied to common-law negligence claims, like the one before us. Arkwright, supra at 604-605, discussing Wetherill v. Putnam Invs., 122 F.3d 554, 558 (8th Cir. 1997) (because § 4-406[4] does not contain language limiting its preclusion to actions under the UCC, in the absence of the notice required by that section, a bank customer is precluded from asserting an unauthorized signature against his bank regardless of whether the claim is based on the UCC or common law).[10] The court buttressed its interpretation of the statute by quoting from the official comment accompanying § 4-406(4): "In the case of alteration or the unauthorized

_____

[10] On appeal, the plaintiff makes an oblique reference to evidence that the bank acted in bad faith during the time period in question, and that this circumstance creates an exception to § 4-406(f). Neither the official comments to the UCC nor Massachusetts law makes any reference to a duty of good faith on the part of a bank that asserts § 4-406 as a defense to an action by a bank depositor. See Halifax Corp. v. First Union Natl. Bank, 262 Va. 91, 102 (2001) (in interpreting that State's counterpart to § 4-406[f], the court notes that it would not be appropriate to import a requirement that a bank must act in "good faith" in order to invoke that section). See also Pinigis v. Regions Bank, 977 So.2d 446, 453-454 (Ala. 2007) (same). Contrast G. L. c. 106, § 4-406(d)(2) (good faith requirement); G. L. c. 106, § 4-406(e) (same). In this case, the plaintiff's count against the bank is based on a theory of negligence; there was no motion to amend the complaint. Thus, we do not address whether § 4-406(f) applies in claims of torts other than negligence. See Grassi Design Group, Inc. v. Bank of America, N.A., 74 Mass. App. Ct. 456, 463-465 (2009) (declining to address the question whether common-law contract claims are precluded by the UCC).

signature of the customer himself the absolute time limit is one year. . . .   This recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature."  Arkwright, supra at 603-604.[11] The drafters of the UCC were not unmindful that there could be exceptional cases in which the time limits set forth in § 4-406(4) were not sufficient to enable a bank customer to detect a forgery of his signature, but nonetheless opted for an absolute time limit of one year after the bank statement was sent to the customer in order to achieve "finality in check fraud litigation."  Arkwright, supra at 603.  The position taken by the court in both Jensen and Arkwright is that taken by most jurisdictions that have considered the question.[12]

---

[11] The official comment reads as follows:  "[S]ubsection (4) places an absolute time limit on the right of a customer to make claim for payment of altered or forged paper without regard to care or lack of care of either the customer or the bank.  In the case of alteration or the unauthorized signature of the customer himself the absolute time limit is one year.  In the case of unauthorized indorsements it is three years.  This recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature."  Arkwright, supra, quoting from Official Comment to U.C.C. § 4-406(4), 2B U.L.A. 400-401 (Master ed. 1991).

[12] See, e.g., Absolute Drug Detection Servs., Inc. v. Regions Bank, 116 So.3d 1162, 1166-1168 (Ala. 2012) (similar to Jensen, agreeing that § 4-406[f] bars suit by a customer against his bank for an unauthorized transaction more than one year after the item appeared on a statement of account sent to the customer); Peters v. Riggs Natl. Bank, N.A., 942 A.2d 1163, 1167 (D.C. 2008) (agreeing with Jensen that § 4-406[f] is not a statute of limitations but, rather is a "statute of repose");

The bank relies on § 4-406(f), and contends that it did not receive "clear notice" of the alleged misappropriations until it received the plaintiff's answers to interrogatories, which provided specific check numbers. At that point, more than one year had elapsed since the bank issued statements containing all of the alleged misappropriations. However, as noted above, the plaintiff's complaint contains two canceled checks for alleged misappropriations that occurred less than one year before the plaintiff filed his complaint. The plaintiff attached to the complaint checks numbered 204 and 205 from Mauro's and Donna's joint account. That alone was sufficient to notify the bank

---

Siecinski v. First State Bank of E. Detroit, 209 Mich. App. 459, 464 (1995) (same); First Place Computers, Inc. v. Security Natl. Bank of Omaha, 251 Neb. 485, 488-489 (1997) (same); Woods v. MONY Legacy Life Ins. Co., 84 N.Y. 2d 280, 284 (1994) (same); Union v. Branch Banking & Trust Co., 176 N.C. App. 711, 717 (2006) (same); Silvia v. Industrial Natl. Bank of R.I., 121 R.I. 810, 816-817 (1979) (same); American Airlines Employees Fed. Credit Union v. Martin, 29 S.W.3d 86, 91-92 (Tex. 2000) (same); Borowski v. Firstar Bank Milwaukee, N.A., 217 Wis. 2d 565, 573-574 (Wis. App. 1998) (same). See also Wetherill v. Putnam Invs., 122 F.3d at 558 (describing the Massachusetts interpretation as the view adopted by a "majority of jurisdictions"); American Fedn. of Teachers, AFL-CIO v. Bullock, 605 F. Supp. 2d 251, 262 (2009) (explaining that the one-year statutory notice requirement of § 4-406[f] applies to all claims regardless of whether they are based on a theory of contract). California has permitted a bank customer to recover from his bank for paying a check bearing a forgery of the customer's signature beyond the one year notice provision in § 4-406. See Sun 'n Sand, Inc. v. United Cal. Bank, 21 Cal. 3d 671, 697-700 (1978). In Arkwright, the court noted that "commentators have soundly criticized this approach," and declined to follow it. Arkwright, 428 Mass. at 605.

that those two transactions were in dispute.[13] However, because those checks were drawn on Mauro's and Donna's joint account, on which Donna was a signatory, they are not unauthorized transactions. See G. L. c. 106, § 4-401(a), as appearing in St. 1998, c. 24, § 8 ("An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank"). As to the checks that the plaintiff alleges that Donna, lacking authorization, drew on the accounts in Mauro's name only, all such checks attached to the complaint were drawn on those accounts more than one year prior to the filing of the complaint. Thus, the bank was not put on notice as to those alleged unauthorized transactions within one year.

In response to the bank's reliance on § 4-406(f), and the reasoning underlying Jensen and Arkwright, the plaintiff maintains that the notice requirement of § 4-406(f) is inapplicable due to the holding in Go-Best Assets Ltd. v. Citizens Bank of Mass., 463 Mass. 50 (2012). In that case, the court held that the defendant bank did not owe a duty of care to

---

[13] To satisfy the notice requirement of § 4-406, a bank customer must give "clear notice" of unauthorized signatures, which generally requires that he identify specific checks he believes to be forged or unauthorized. See 2 White, Summers, & Hillman, Uniform Commercial Code § 19:38, at 431 (6th ed. 2013); Hatcher Cleaning Co. v. Comerica Bank-Tex., 995 S.W.2d 933, 938 (Tex. App. 1999) ("both the check and the account should be specifically identified").

protect a client of an attorney customer from the misappropriation by the attorney of the client's funds from the attorney's trust fund account, because there was no evidence that the bank had "actual knowledge" of the misappropriation. Id. at 62.  The court reiterated the longstanding Massachusetts rule that generally a bank has no duty to investigate authorized transactions for misappropriation, unless the bank has "actual knowledge of an intended or apparent misappropriation of funds and its failure to act would constitute participation or acquiescence in the misappropriation."  Id. at 54.

Here, the plaintiff contends that there is evidence in the record which, if believed, would demonstrate that the bank had actual knowledge that Donna was misappropriating funds from Mauro.  For example, the plaintiff refers to evidence concerning the bank's fraud detection software and policies and Donna's interactions with one of the bank's assistant managers as creating a genuine issue of material fact whether the bank had actual knowledge of the alleged misappropriations.  However, we think the plaintiff places too much weight on the decision in Go-Best Assets Ltd., which does not discuss or even cite Jensen or Arkwright.  This is understandable because Go-Best Assets Ltd. deals with a plaintiff who was not a customer of the bank. In the present case, the relationship between Mauro, the bank's customer, and the bank is governed by the UCC.  See Lemelman,

Manual on Uniform Commercial Code § 4:52 (rev. 3d ed. 2012)
(explaining the various loss allocation formulas between a
customer and his bank that are governed by G. L. c. 106, § 4-
406).  Go-Best Assets Ltd., on the other hand, addresses a
bank's duty to a third party in a situation where the UCC does
not apply.[14]

Conclusion.  The question before us is not whether the bank
owes a duty of care to its customers, for it most certainly
does.  Rather, the question is whether the Legislature, in
allocating losses between a customer and his bank that result
from the payment of a check bearing an unauthorized signature or
alteration, established an absolute time limit of one year
within which the customer must give notice to the bank of the
unauthorized payment.  We think that the Supreme Judicial Court
answered the question in the affirmative in Jensen and
Arkwright, and did not alter its position in Go-Best Assets Ltd.
For the above reasons, the judge ruled correctly that in the

---

[14] The plaintiff maintains that Go-Best Assets Ltd. allows
his negligence claim to go forward, pointing out that the cases
cited by the court all involve plaintiff-customers.  However,
those cases either involved circumstances that were not governed
by the UCC, see Schlichte v. Granite Sav. Bank, 40 Mass. App.
Ct. 179, 179-180 (1996) (claim that defendant bank was negligent
in supervising its employee who, after being added to a
relative's joint accounts, misappropriated the funds), or were
decided prior to Massachusetts adopting the UCC in 1957.  See
Newburyport v. First Natl. Bank of Boston, 216 Mass. 304 (1914);
Eastern Mut. Ins. Co. v. Atlantic Natl. Bank of Boston, 260
Mass. 485 (1927).

absence of notice to the bank within one year of the bank sending to Mauro statements showing the items that were paid, the plaintiff was barred by G. L. c. 106, § 4-406(f), from bringing a civil action for negligence against the bank for honoring checks based on an unauthorized signature or alteration.[15]

We therefore affirm so much of the November 5, 2014, judgment as dismisses the count against TD Bank, N.A.

So ordered.

---

[15] As our disposition in this case turns on the application of § 4-406(f), we need not address the bank's argument that the plaintiff's claim is barred by the economic loss doctrine.