Botsford, J.
The central focus of this case is a check with a missing indorsement that Enterprise Bank and Trust Company (“Enterprise” or “the bank”) negotiated and Fleet Bank (“Fleet”) honored. The check was drawn payable to Joseph Shanahan (“Shanahan”) and Joanne Meyers (“Meyers”), attorneys for John Chow and Nancy Chow, respectively. However, Shanahan successfully deposited the check with only his indorsement. The plaintiffs’ complaint against Enterprise and Fleet seeks to recover the check funds that were later stolen by Shanahan. The plaintiffs bring claims under the Uniform Commercial Code and Chapter 93A. Enterprise has filed a counterclaim against Meyers. The counterclaim sets out in substance a claim of contribution under theories of common-law negligence and liability under G.L.c. 106, §3-406. Pursuant to Mass.R.Civ.P. 12(b)(6), Meyers now moves to dismiss Enterprise’s Counterclaim. For the reasons discussed below, the motion is ALLOWED.
Background
The amended complaint and counterclaim allege the following facts which I accept as true for present purposes. The plaintiffs John S.K. Chow and Nancy Chow were parties to a divorce proceeding; Meyers was Nancy Chow’s attorney, and Shanahan was John Chow’s attorney. A temporary order issued in the divorce proceeding in September 1999, which provided that should the marital home be sold before the final divorce, all proceeds from the sale were to be held in “two separate equally funded escrow accounts” with “both parties’ attorneys as escrow agents.” The temporary order was in effect at all applicable times. On April 14, 2000, pursuant to the resolution of the divorce case, the Chows sold the marital home for $392,882.00. John Chow, Nancy Chow, and Joseph Shanahan attended the closing; Meyers did not, even though the temporary order had called for the equal split of the sale proceeds into separate accounts, and the divorce proceeding had been contentious. At the closing, a check was presented to the Chows and Shanahan for the purchase price, made payable to “Joseph Shanahan and Joanne Meyers, Attorneys for John S.K. Chow and Nancy Chow.” Shanahan took the check, held it for roughly three weeks and, on or about May 1, 2000, deposited the check in his clients’ funds account at Enterprise (the depositary bank), but did so without Meyers’ indorsement. On or about May 5, 2000, Fleet, the drawee bank, honored the check. On or about May 1, 2001, Shanahan removed the funds from his clients’ funds account in Enterprise and stole *796 them. (He has since been disbarred.) Meyers took no timely action to endorse the check or to claim the funds held in Shanahan’s clients’ account.[1]
John Chow, Nancy Chow, and Meyers filed this action against Enterprise and Fleet, asserting in pertinent part claims against them under G.L.c. 106, §3-420.[2] Enterprise’s counterclaim asserts that Meyers “as co-payee and as attorney and agent for Mrs. Chow, had a duty of ordinary care to those persons in subsequent possession of the instrument!,]” that she failed to exercise ordinary care to insure “that the intended beneficiaries received the proceeds of the [check] and that the proper indorsement was made[,]” that Meyers’ failures “substantially contributed to the loss, if any, of the proceeds from the sale of the Chows’ marital home, and that Enterprise has suffered damages on account of . . . Meyers’ conduct.” Counterclaim, ¶¶21-25. The counterclaim asserts liabiliiy under common-law negligence principles, and also sets out a claim of preclusion or comparative negligence under G.L.c. 106, §3-406.[3]
Meyers has moved to dismiss the counterclaim on the following grounds: (1) Enterprise’s negligence claim fails because Meyers owed no duly of care to Enterprise as a matter of law, and a negligence claim cannot arise without duly; (2) Enterprise is precluded from making a claim against a payee, Meyers in this case, when Enterprise accepted the check with a missing indorsement; and (3) G.L.c. 106, §3-406, does not authorize Enterprise to make a claim against Meyers because the section does not apply to a check with a missing indorsement.
Discussion
Meyers brings this motion to dismiss under Mass.RCiv.P. 12(b)(6), and accordingly, the motion may only be granted if there is no state of facts that would entitle Enterprise to relief. E.g., McCarthy v. Landry, 42 Mass.App.Ct. 488, 490 (1997), quoting Nader v. Citron, 372 Mass. 96, 98 (1977).
1. Negligence
Enterprise’s counterclaim asserts that Meyers was negligent towards Enterprise in her role as an attorney, and also as a payee of the check in question. To establish a claim of negligence against Meyers, Enterprise must establish a “legal duty owed by [Meyers] to [Enterprise], and a breach of that duty proximately resulting in the injury.” Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). The determination of whether Meyers owes a duty of care to Enterprise in the circumstances presented is a question of law for the court. See O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000).
Duty means an obligation to conform to a particular standard of conduct toward another party, which is recognized and enforced in the law. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, §53 (5th ed., 1984). Such a duty generally arises from a special relationship between the defendant and the plaintiff. Whether a special relationship existed between thepartiesdependsonwhetherthedefendant could reasonably foresee that her actions would result in harm of the plaintiff. Irwin v. Ware, 392 Mass. 745, 756-57 (1984); see also J.R Nolan, Tort Law §171 (1979).
In connection with Meyers’ alleged duty as an attorney, Enterprise contends that even though there was no attorney-client relationship between Enterprise and Meyers, she owed a duly to the bank because it was foreseeable to her that Enterprise would rely on her services. Enterprise cites Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, cert. denied, 493 U.S. 894 (1989), for this point. The Gaston Snow case does not reach so far. It states that “[a]n attorney owes a duly to a non-client who the attorney knows will rely on the services rendered.” Id. at 524. See Lamare v. Basbanes, 418 Mass. 274, 276 (1994). While there are a host of purportedly factual allegations of what Meyers “knew” (see note 1 above), these cannot reasonably can be read to support the proposition that Meyers had any knowledge Enterprise would rely on her in connection with the legal services she was providing to her client Nancy Chow. The cases in which claims of duly on the part of an attorney to a non-client have been permitted to go forward have been those in which the attorney has made representations to the non-client on which that person allegedly relied. See McCarthy v. Landry, supra, 42 Mass.App.Ct. at 489-91. See also, e.g., DeLuca v. Jordan, 57 Mass. 126, 136-38 (2003); Kirkland Const. Co. v. James, 39 Mass. 559, 562-64 (1995). There were no representations by Meyers to Enterprise; as indicated, no relationship or communication at all is alleged between them. Indeed, there is allegation that at any relevant time (for example, before or at the time Enterprise accepted the check for deposit with Shanahan’s sole indorsement), Enterprise knew who Meyers or her client was, or anything about the check and what it represented. The obvious question arises of how Meyers can be held to know that Enterprise was relying on her services as an attorney when Enterprise had no knowledge of Meyers.[4]
The claim that Meyers, as one of the payees of the check, owed the bank a duty of care fares no better. Even if one assumes that as alleged, Meyers knew she was named as a co-payee on the check, the scope of a co-payee’s duty of care simply does not extend to every potential depositary bank. Enterprise appears to be arguing in substance that as a co-payee, Meyers had an obligation to use reasonable care to prevent the other co-payee from presenting the check with a missing indorsement so that a potential depositary bank like Enterprise might avoid the risk of accepting the check in that incomplete condition. Such a claim simply pushes the concept of duty too far. (See note 4.)
*797 2. The Uniform Commercial Code
Enterprise also argues that even if Meyers could not be found negligent in relation to Enterprise under the common law, her claim against Enterprise is barred or at least limited by the provisions of G.L.c. 106, §3-406 (“3-406”). Under §3-406(a), if a person’s failure to exercise ordinary care substantially contributes to the allegation of check or other instrument or to a forged signature on such an instrument, the person is precluded from asserting the alteration or forgery against a bank such as Enterprise that pays the check or takes it for collection. Under §3-406(b), even if the bank were negligent in paying or taking the check, the loss associated with a forged or altered check is allocated between the two negligent parties. (See note 3 above, the relevant portions of §3-406 are set out.)
With respect to Enterprise’s argument that Meyers failed to use ordinary care under §3-406, it is critical first to determine whether the section applies to a missing indorsement as opposed to a forged or altered check, because if it does not, Meyers’ failure to use care is irrelevant. Enterprise argues that for purposes of §3-406, a missing indorsement is equivalent to a forged indorsement. It contends in substance that unquestionably the former version of §3-406,[5] which used the language “unauthorized signature,” a missing indorsement could be treated same as a forged signature, see, e.g., Kuwait Airways Corp. v. American Sec. Bank, N.A., 890 F.2d 456, 463-64 (D.C.Cir. 1989) (construing prior version of §3-406), and there is no specific indication that the omission of the term “unauthorized signature” in the new §3-406 was intended to change this result. Cf. Arkwright Mut. Ins. Co. v. State Street Bank & Trust Co., 428 Mass. 600, 602-04 (1998) (interpreting term “unauthorized indorsement” in G.L.c. 106, §4-406).
This argument is defeated by the clear language of §3-406, as amended in 1998, as well as by the official comments to the section. First, §3-406 now speaks of “alteration of an instrument” and “making of a forged signature on an instrument”; the phase “unauthorized signature” is out. The term “alteration” is defined in G.L.c. 106, §3-407(a), to mean “(i) an unauthorized change of an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.” A missing indorsement does not fit within this definition. Similarly, the common understanding of the term “forged signature” — a term that is not defined in Article 3 of the Uniform Commercial Code— is a fraudulent or counterfeit signature or name that has affirmatively been placed on an instrument, again a term that does not include an absent indorsement. Second, in the official comments to §3-406, comment 2 states that the section “refers to ‘forged signature’ rather than ‘unauthorized signature’ that appeared in former §3-406 because ‘forged signature’ more accurately describes the scope of the provision. Unauthorized signature is a broader concept that includes not only forgery but also the signature of an agent which does not bind the principal under the law of agency . . .”[6] Furthermore, the official comments read as a whole signify that the focus of the section is on negligent conduct by drawers of checks or other instruments, not on payees. See comment 1 and the examples in comment 3.
In sum, it is clear that §3-406 in its current form does not cover a missing indorsement, and accordingly, Enterprise’s reliance on that section for a source of assigning liability to, or sharing liability with, Meyers, is misplaced.
ORDER
For the foregoing reasons, the motion to dismiss the defendant Enterprise Bank and Trust Company’s counterclaim is ALLOWED.

The counterclaim contains a number of paragraphs alleging that on information and belief, Meyers knew or should have known about the closing, knew or should have known that she was a co-payee on the check and had not endorsed it, knew or should have known by conferring with Hall, Finnegan, Ahem & Deschenes, the law firm at which the closing took place, into which bank Shanahan deposited the check, and knew or should have known that Shanahan held the proceeds in his clients’ account at Enterprise for one year. To the extent these allegations mean “should have known,” they are not true allegations of fact and I do not accept them as such. To the extent the allegations are read to mean that Meyers actually knew the facts stated, it is important to note that almost all of these “facts” relate to events at or after Enterprise accepted for deposit, with only a single indorsement, the check made payable to Shanahan and Meyers.

General Laws c. 106, §3-420 provides in part as follows:
(a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instalment for a person not entitled to enforce the instrument or receive payment. . . (Emphasis supplied.)
The Official Comment to this section makes clear it covers cases where a depositary bank takes a check made payable to two persons (John and Jane Doe) jointly and deposits it in one of those persons’ account: “If Depositary Bank takes the check for deposit to John’s account, Depositary Bank is liable to Jane for conversion of the check if she did not consent to the transaction. John, acting alone, is not the person entitled to enforce the check because John is not the holder of the check . . .” Section 3-420, Comment 1.

General Laws c. 106, §3-406 states in relevant part:
(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

Moreover, when one focuses on the “reliance” to which Enterprise must be referring, it is reliance on Meyers to save the bank from essentially its own negligence — that is, Enterprise’s acceptance of a check made payable to two parties with only one indorsement being presented. It cannot be said that the law of foreseeability is expansive enough to impose a duty on an attorney to take steps to protect a bank with which the attorney has no relationship from the bank’s own carelessness.

General Laws c. 106, §33-406 was revised in 1998. See St. 1998, c. 24, §8.

See J.J. White and R.S. Summers, Uniform Commercial Code, §19-3 at 241 (4th ed. 1995) ([t]he revised 3-406 “covers only negligence that results in alteration or the making of a ‘forged signature.’ The comments state the drafters’ intention to limit [§3-406] to forgeries and to exclude unauthorized signatures that are not forgeries”).