Filed 1/19/23

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| LEROY IYERE et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> WISE AUTO GROUP, <br><br>     Defendant and Appellant. | A163967 <br><br> (Marin County <br> Super. Ct. No. CIV2101151) |

Wise Auto Group, doing business as Infiniti of Marin (hereafter Wise), appeals an order denying its motion to compel Leroy Iyere, Phillip Derbigny, and Michael Worlow (collectively plaintiffs) to arbitrate their employment-related claims. Plaintiffs asserted that they did not recall signing the arbitration agreement bearing their purported handwritten signatures and that the asserted agreement is unconscionable. The court concluded that Wise had not borne its burden of proving the authenticity of the signatures and, alternatively, that the agreement is unconscionable. We shall reverse.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs began working for Wise on separate dates in 2018 and 2019. Worlow and Derbigny were sales consultants; Iyere was a sales manager. With its motion to compel arbitration, Wise submitted, among other things, copies of a binding arbitration agreement (the agreement) with the purported

handwritten signature of each plaintiff, hand-dated on their respective start dates.[1]

The copies of the agreement bearing the signatures of Iyere and Worlow state that "any claim, dispute, and/or controversy arising from, or relating in any way to, Employee's employment relationship . . . with the Company, including without limitation, any claim or controversy brought on behalf of or against the Company or [related entities] which would otherwise be brought in court . . . shall be submitted to, and . . . resolved through, final and binding arbitration before an arbitrator selected in accordance with the procedures of the arbitration service selected by the party against whom the claim is brought from among the following: Alternative Dispute Resolution Services, Judicial Arbitration and Mediation Services, or such other service to which the parties agree." The agreement states that it is "governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.) ('FAA') and to the extent not inconsistent with the FAA, the procedures set forth in . . . Code of Civil Procedure [section] 1280, et seq.," and that it is "controlled by the [FAA], in conformity with the procedures of the California Arbitration Act (Code Civ. Proc. §§ 1280 et seq including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery)." The agreement covers "all claims, allegations and

---

[1] Wise also offered copies of compensation agreements, one for sales consultants and one for sales managers, that each contain an arbitration clause and bear plaintiffs' apparent handwritten signatures, as well as copies of an "Employee Acknowledgment and Agreement" that has an arbitration clause and bears Iyere's apparent physical signature and employment applications that contain arbitration clauses and which Worlow and Derbigny allegedly signed electronically. No single one of those documents was signed by all three plaintiffs. Wise's motion relied almost entirely on the binding arbitration agreement, with one reference to the compensation programs and a footnote citing the other agreements. We limit our discussion to the binding arbitration agreement.

charges of violation of federal[,] state or local law[,] statute[,] ordinance[,] rule or regulation (e.g., claims of discrimination . . . , breach of . . . contract[,] tort claims, wage payment claims, violation of public policy claims, or any other alleged violation of statutory, contractual or common-law rights."[2] It bans class arbitration, waives the employees' right to join class litigation, and sets forth in capitalized letters that the parties waive the right to a jury trial of any covered claim, noting that such right "is of value" and that the employee "may wish to consult with an attorney prior to signing this agreement."

The agreement ends with admonitions that a decision to agree to arbitration is important and is the employee's to make, and that he or she should conduct research and consult with others including an attorney about its consequences. There follows an acknowledgement that the employee has read the agreement carefully and understands that it is voluntary and that he or she "can choose not to sign this agreement and still become or remain employed by the company," without retaliation.

The copy of the agreement bearing Derbigny's signature differs in some respects,[3] but none material to resolution of this appeal.

---

[2] The agreement adds that it covers claims under specified federal antidiscrimination statutes and under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), while excluding only claims under the National Labor Relations Act or Private Attorneys' General Act (Lab. Code, § 2698 et seq.), claims for unemployment compensation or workers' compensation, claims within the jurisdiction of a small claims court, and claims that cannot by law be subject to mandatory arbitration.

[3] Rather than state that the parties will use "an arbitrator selected in accordance with the procedures of the arbitration service selected," Derbigny's copy states, "in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court." Derbigny's copy also specifies that "[a]wards shall include the

Wise fired plaintiffs in 2019. In 2021, they filed a joint complaint asserting 25 causes of action against Wise and its employee Dino Ricci, including claims for discrimination, harassment, retaliation, breach of contract, torts, violation of statutory rights, and wrongful termination in violation of public policy. Wise filed a motion to sever the complaints and compel each plaintiff to submit his claims to individual arbitration pursuant to the agreement (see p. 1 & fn. 1, *ante*).[4] Accompanying the motion, Wise submitted a declaration from George Allen, its HR director and custodian of personnel records since January 2020, authenticating the documents, including the agreement bearing the purported handwritten signature of each plaintiff.

In opposition, each plaintiff signed a materially identical declaration alleging that, on his first day of work, he "met with a female [Wise] employee who handed me a large stack of documents to fill out"; he "was not given any time to review the documents because the [m]anager of [Wise] rushed me to get to work . . . [and] specifically told [me] to quickly sign the documents so I could get to work"; and he "signed the stack of documents immediately and returned them." Each plaintiff alleged that Wise never gave him a copy of the documents he signed and that he first saw the agreement when his lawyer showed him the declaration of Allen, whom he had never met. Each plaintiff added, "In fact, I do not recall ever reading or signing any document entitled

_____

arbitrator's written reasoned opinion" and that if Code of Civil Procedure section 1284.2 "conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law."

[4] Although Wise asked the court to compel arbitration of the claims against both itself and its employee Ricci, Wise alone filed the motion, and only Wise has appealed its denial.

4

Binding Arbitration Agreement or Employment Acknowledgment. I do not know how my signature was placed on [either document]."

Each declaration alleged that the plaintiff believed that, in order to work for Wise, he had "no choice but to sign the documents presented to me" and "no power to negotiate or modify the terms of [the agreement]." When he first read the agreement in the course of this action, he found it "confusing" and his lawyer explained that it bars him from suing Wise. "This is the first time I was made aware of this. If I had known I was giving up my rights to file a lawsuit against [Wise,] I would have refused to sign the document. I would never agree to waive my rights to file a lawsuit against [Wise] or participate in this consolidated action with [my co-plaintiffs]."

The declarations continue, "[N]o one ever told me or explained to me what I was signing and that I was agreeing to arbitrate any disputes with [Wise] and . . . giving up my rights to file a lawsuit against them in court. . . . [¶] . . . I do not have any legal training, so I do not understand what [the agreement] means because it is complicated and [cites] laws and codes that I have never heard of. [¶] . . . No one . . . afforded me the opportunity to opt-out of [the agreement] or [said] that I had the right to [do so]. If I had known that I could opt-out, I would have definitely opted-out. Instead, I was told to hurry up and sign a large stack of documents on my first day of work."

Plaintiffs also contended that the agreement is procedurally and substantively unconscionable. They based the latter claim on its failure to specify that the arbitration will afford them various rights. They also contended that, because the agreement states that it is governed by the FAA, it violates Labor Code section 925 (section 925), which bars contractual terms that require employees who live and work in California to waive, as a condition of employment, the substantive protections of California law.

5

The trial court ultimately denied the motion.[5] It held that Wise failed to bear its burden of proving the authenticity of the signatures, and that the agreement is procedurally and substantively unconscionable. The court based the latter ruling on its determination that the agreement violates section 925 by stating it is governed by the FAA, and that its provision allowing the party against whom the claim is made to choose between two arbitration providers unfairly favors Wise, which is more likely to be that party. Wise timely appealed the order.

**DISCUSSION**

### 1. *Standard of Review*

If a party to a civil action asks the court to compel arbitration of the pending claim, the court must determine in a summary proceeding whether an "agreement to arbitrate the controversy exists." (Code Civ. Proc., §§ 1281.2, 1290.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412–413 (*Rosenthal*).) "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement . . . that party

---

[5] The court issued a tentative ruling denying the motion and granting plaintiffs' request for attorney fees pursuant to section 925, based on the agreement's purported violation of that statute. At an initial hearing on the motion, Wise asked the court to delay ruling until Wise could depose plaintiffs about the allegations in their declaration, or to make any denial of the motion without prejudice to renewal after such discovery. Wise also noted the lack of authority for a fee award, and the court set a further hearing and requested supplemental briefs on that issue, while stating that it would adopt its tentative ruling as to all other issues. After a second hearing, the court made its denial of the motion without prejudice to renewal if Wise develops evidence controverting plaintiffs' declarations, and it awarded plaintiffs fees. Wise's appeal also challenges that award, but our conclusion that the order must be reversed on the merits moots that issue.

6

bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." (*Rosenthal*, *supra*, at p. 413.)

The parties here dispute both the existence of an agreement (i.e., the authenticity of plaintiffs' signatures) and a defense to its enforcement (i.e., plaintiffs' claim that it is unconscionable (*Fisher v. MoneyGram International, Inc.* (2022) 66 Cal.App.5th 1084, 1094 ["unconscionability is a defense to enforcement of a contract"] (*Fisher*)). On the defense of unconscionability, plaintiffs bore the burden of proof. (*Ibid.*) As to the existence of an agreement, Wise bore the ultimate burden of proof, but the court was obliged to resolve the dispute using a three-step burden-shifting process. (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1056 (*Espejo*).)

The arbitration proponent must first recite verbatim, or provide a copy of, the alleged agreement. (Cal. Rules of Court,[6] rule 3.1330; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219.) A movant can bear this initial burden "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature." (*Espejo, supra*, 246 Cal.App.4th at p. 1060.) At this step, a movant need not "follow the normal procedures of document authentication" and need only "allege the existence of an agreement and support the allegation as provided in rule [3.1330]." (*Condee, supra*, at pp. 218–219.)

If the movant bears its initial burden, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence—in this instance, by disputing the authenticity of their signatures. To bear this burden, the arbitration opponent must offer admissible evidence creating a factual dispute as to the authenticity of their signatures. The

---

[6] All undesignated rules citations are to the California Rules of Court.

opponent need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature. (*Espejo, supra,* 246 Cal.App.4th at p. 1060.)[7]

On appeal, we review orders denying motions to compel arbitration for abuse of discretion unless the matter presents a pure question of law, which we review de novo. (*Espejo, supra,* 246 Cal.App.4th at pp. 1056–1057.) Each question in this appeal is one of law. As to the existence of an agreement, we review de novo the trial court's ruling that plaintiffs' evidence was sufficient to create a factual dispute shifting the burden of production back to Wise. As to the unconscionability defense, the terms of the agreement are undisputed, so we review de novo whether they are unconscionable. (*Fisher, supra,* 66 Cal.App.5th at p. 1094 ["ultimate determination of unconscionability . . . is an issue of law, not fact"].)

---

[7] In *Condee v. Longwood Management Corp., supra,* 88 Cal.App.4th 215, the Fourth Appellate District stated, "Once the petitioners had alleged that the agreement exists, the burden shifted to respondents to *prove the falsity* of the purported agreement." (*Id.* at p. 219, italics added.) Subsequently, in *Toal v. Tardiff* (2009) 178 Cal.App.4th 1208, the same court quoted the discussion of the parties' respective burdens in *Rosenthal, supra,* 14 Cal.4th 394, quoted the above passage from *Condee,* and stated, "To the extent *Condee* conflicts with *Rosenthal,* our Supreme Court's decision is controlling." (*Toal, supra,* at p. 1219, fn. 8.) The correct rule is thus that if an arbitration proponent makes an adequate initial showing that an agreement exists, it shifts to the opposing party not the ultimate burden of *proof* but only a burden of *production* of evidence creating a dispute as to their signature's authenticity; the ultimate burden of proof remains with the arbitration proponent.

## 2. *Plaintiffs Offered No Admissible Evidence Creating a Dispute As to the Authenticity of their Physical Signatures.*

Wise submitted copies of the agreement bearing plaintiffs' apparent handwritten signatures. In response, no plaintiff declared that he had *not* signed the agreement, or that his physical signature was forged or inauthentic. To the contrary, each plaintiff declared that on his first day of work he was given a stack of documents, was told "to quickly sign the documents so I could get to work," and "*signed the stack of documents immediately and returned them*" (italics added). Each added, "I do not recall ever reading or signing any document entitled Binding Arbitration Agreement . . . . I do not know how my signature was placed on [the document]." Each plaintiff stated further that if he had understood that the agreement waived his right to sue Wise, he would not have signed it.

That evidence does not create a factual dispute as to whether plaintiffs signed the agreement. The declarations explicitly acknowledge that plaintiffs signed a "stack of documents" and do not deny that the stack included the agreement. Although the plaintiffs state they do not recall signing the agreement, there is no conflict between their having signed a document on which their handwritten signature appears and, two years later, being unable to recall doing so. In the absence of any evidence that their purported signatures were not their own, there was no evidence that plaintiffs did not in fact sign the agreement.

In holding that plaintiffs' declarations shifted the burden back to Wise, the court cited two distinguishable cases involving electronic signatures: *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541 (*Bannister*) and *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*). In *Ruiz*, the court denied enforcement of an arbitration agreement purportedly signed electronically by Ruiz, an employee. Ruiz declared that he "did not

9

recall signing any arbitration agreement," and if he had been given such an agreement, he would not have signed it. (*Id.* at p. 840.) The employer offered a declaration that explained how it disseminated the agreement and how employees electronically executed it, yet "did not indicate *whether or if so how* [the employer] ascertained that Ruiz electronically signed, or was the person who electronically signed, . . . the 2011 agreement." (*Id.* at p. 841.) Applying the Uniform Electronic Transactions Act (Civ. Code, § 1633.1 et seq.), the Fourth Appellate District held that the employer had not borne its burden of proving that the electronic signature was "the act of" the employee. (*Ruiz, supra,* 232 Cal.App.4th at pp. 842–845, citing Civ. Code, § 1633.9, subd. (a).)

The other case the trial court cited, *Bannister, supra,* 64 Cal.App.5th 541, also involved an electronic signature and facts very different from those here.[8] Neither case has any bearing on the situation in the present case. An individual cannot confirm or deny the authenticity of an electronic signature by viewing a computer printout of the person's printed name followed by the words "(Electronic Signature)." In such a case, the individual's inability to recall signing electronically may reasonably be regarded as evidence that the person did not do so. However, an individual is capable of recognizing his or

---

[8] The employer in *Bannister* acquired a company where Bannister worked. (*Bannister, supra,* 64 Cal.App.5th at p. 544.) The employer's HR manager, Matson, declared that she visited the site, sat next to Bannister, and watched her complete an onboarding process on a computer, during which Bannister electronically executed the arbitration agreement. (*Id.* at p. 546.) But Bannister declared that the onboarding was rushed, and that she watched Matson herself onboard 20 employees in one day, including Bannister herself, by entering their information into Matson's laptop; that Matson orally elicited identifying information from Bannister without ever showing her what she was typing; and that Bannister never touched the keyboard or saw any of the documents she allegedly electronically signed. (*Id.* at pp. 546–547.)

her own personal signature. If the individual does not deny that the handwritten personal signature is his or her own, that person's failure to remember signing is of little or no significance.

Plaintiffs cite no decision applying the decision in *Ruiz* to a handwritten signature, but we acknowledge that one recent case has done so: *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158. The employer in *Gamboa* relied on a copy of an arbitration agreement that bore Gamboa's handwritten signature. (*Id.* at pp. 163, 168.) Gamboa filed a declaration stating that "she reviewed the arbitration agreement . . . but does 'not remember these documents at all' "; that "before this case, no one had ever told her about an arbitration agreement or explained what it was"; and that "if she had known about the arbitration agreement and had been told about its provisions, she would not have signed it." (*Id.* at p. 163.) The Second Appellate District held that Gamboa bore "her burden on the second step [of the burden-shifting process] by filing an opposing declaration, saying she did not recall the agreement and would not have signed it if she had been aware of it." (*Gamboa, supra,* 72 Cal.App.5th at p. 167.) The court likened her showing to that in *Ruiz.* (*Id.* at pp. 167–168.) The court regarded the fact that Gamboa's signature was handwritten, while the purported signature in *Ruiz* was electronic, as "a distinction without a legal difference" because "electronic and handwritten signatures have the same legal effect and are equally enforceable." (*Id.* at p. 168, citing Civ. Code, § 1633.7.)[9]

---

[9] The court concluded its analysis of the second step as follows: "[W]e need not decide whether Gamboa challenged the authenticity of her purported signature on the arbitration agreement. It was enough that she challenged the authenticity of the agreement by saying under penalty of perjury that she did not remember it." (*Gamboa v. Northeast Community Clinic, supra,* 72 Cal.App.5th at p. 168.) We question how the "authenticity of

With all respect, we disagree. While handwritten and electronic signatures once authenticated have the same legal effect, there is a considerable difference between the evidence needed to authenticate the two. Authenticating an electronic signature if challenged can be quite daunting. (See, e.g., *Espejo, supra*, 246 Cal.App.4th at pp. 1061–1062.) An individual cannot affirm or disavow an electronic signature from the face of a computer printout, but an individual normally can recognize or disavow a handwritten signature that purports to be his or her own. (See, e.g., *Arkwright Mutual Ins. Co. v. State Street Bank & Trust Co.* (Mass. 1998) 703 N.E.2d 217, 220 [time limit for claim against bank based on forged check " 'recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature' "], quoting Official Cmt. to Uniform Com. Code, § 4406(4), 2B West's U.Laws Ann. 400–401 (Master ed. 1991).) If a party confronted with his or her handwritten signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged, the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed.

Even if plaintiffs' assertion that they did not recall signing the agreement were considered sufficient to meet their burden of producing evidence to return the burden to Wise, the record contains the declaration of George Allen, Wise's custodian of records, identifying the agreement. Based on lack of personal knowledge, plaintiffs objected to the admissibility of Allen's statements in the declaration that each plaintiff signed the agreement. However, plaintiffs did not object to Allen's attestation that the

the agreement" can be challenged without challenging the authenticity of the plaintiff's signature on that agreement.

document attached to his declaration was a true and correct copy of the agreement, nor did they object to the receipt of the agreement in evidence. The court sustained plaintiffs' objections without explanation, presumably on the ground advanced by plaintiffs, that Allen was not yet employed by Wise, or present, on the date each plaintiff allegedly signed the agreement, so could not confirm that they did so. But the custodian of a document need not have been present or employed when the document was created or signed to authenticate a document in a company's files (see *Estate of O'Connor* (2017) 16 Cal.App.5th 159, 170 [any qualified witness knowledgeable about documents may lay foundation for business records]; *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 684 ["no strict requirement as to how a party authenticates a writing"], citing Evid. Code, § 1410), as plaintiffs implicitly acknowledged by not objecting to the exhibits.

Moreover, as indicated above, plaintiffs acknowledged that although they did not read the papers, they did sign those included in the "stack of documents" with which they were presented. It is hornbook law that failing to read an agreement before signing it does not prevent formation of a contract. (*Upton v. Tribilcock* (1875) 91 U.S. 45, 50 ["It will not do for a [person] to enter into a contract and when called upon to respond to its obligations, to say that [they] did not read it when [they] signed it, or did not know what it contained."]; *Hawkins v. Hawkins* (1875) 50 Cal. 558, 560 [similar]; 1 Williston on Contracts § 4:19 (4th ed. 2007).) That settled rule cannot be evaded by adding, ". . . and if I had read the contract, I wouldn't've signed it." Plaintiffs' allegation as to *why* they did not read the contract before signing it—i.e., that they were pressured to sign it quickly and not given time to read it—is material only to whether enforcement of the agreement is barred by the defense of unconscionability, to which we now turn.

13

### 3. *Plaintiffs Did Not Prove the Agreement Is Unconscionable.*

Unconscionability entails " ' " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " ' " (*Fisher*, *supra*, 66 Cal.App.5th at p. 1093.) It has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Ibid.*) Both elements must be present, but courts assess them on a sliding scale: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa." (*Ibid.*)

On appeal, Wise essentially acknowledges that plaintiffs' declaration offers substantial evidence that the agreement was procedurally unconscionable. We may assume as much, but plaintiffs have not shown any element of substantive unconscionability. While the scale is sliding, there must be some weight on each side. (*Fisher*, *supra*, 66 Cal.App.5th at p. 1093.)

The trial court based its finding of substantive unconscionability on two factors.[10] One is that the agreement states that it is governed by the FAA. In the view of the trial court, this provision violates section 925, which forbids an employer to "require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [¶] . . . [d]eprive the employee of the substantive protection of California

---

[10] In the "substantive unconscionability" section of its order, the court added that some of the arbitration provisions cited by Wise are "hidden" in separate documents. We need not address that part of the ruling, both because it concerns procedural rather than substantive unconscionability and because we base our analysis solely on the terms of the agreement itself.

law with respect to a controversy arising in California." (§ 925, subd. (a).[11]) We disagree.

The FAA does not prescribe substantive rules of law for resolving disputes. It does not displace the substantive law of California (or of any other state) that applies to the resolution of disputes subject to arbitration under an agreement covered by the FAA. " ' "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." ' " (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 123.) That is surely why, as Wise points out, no published opinion holds that a contract violates section 925 by invoking the FAA; decisions applying section 925 involve contracts requiring California employees to litigate claims in, or under the substantive law of, another state.[12] Plaintiffs cite no other authority.

The trial court's second basis for finding the agreement substantively unconscionable was "the seemingly neutral, but practically one-sided language which gives the choice of the arbitration forum to the party against whom the

---

[11] Section 925, subdivision (a)(1) also bars contract terms requiring California employees to agree "to adjudicate outside California a claim arising in California." Plaintiffs do not claim any violation of that provision.

[12] See *LGCY Power, LLC v. Superior Court* (2022) 75 Cal.App.5th 844, 852 [clause requiring litigation in Utah under Utah law]; *Midwest Motor Supply Co. v. Superior Court* (2020) 56 Cal.App.5th 702, 707 [clause requiring litigation in Ohio]; cf. *Ryze Claim Solutions LLC v. Superior Court* (2019) 33 Cal.App.5th 1066, 1068 [clause requiring litigation in Indiana]; see also *Zhang v. Superior Court* (2022) 85 Cal.App.5th 167, 171–172, 175 [section 925 did not strip New York court of jurisdiction to enforce delegation clause in arbitration agreement stating that arbitrator is to decide whether plaintiff qualified as "employee" entitled by section 925 to void forum-selection clause and require that arbitration occur in California].)

claim is made"—which the court assumed was likely to be Wise. We need not question that assumption, but we do not agree that the ability to choose between the two arbitration providers affords Wise a significant advantage rendering the agreement unconscionable. Both providers are well recognized and respected alternative resolution firms. Neither plaintiffs nor the court articulate any reason why the ability to choose between the two gives the defendant an advantage—for example, evidence that arbitrators associated with one service tend to rule in favor of employers, either generally or in particular types of cases.

On appeal, plaintiffs contend the agreement is unconscionable for a third reason that they raised without success below. Plaintiffs argue that the agreement does not expressly state that the arbitration will comply with the minimal requirements for the mandatory arbitration of FEHA claims articulated in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 90–91, 113. The agreement does not specify that the arbitrator will be neutral, issue a written award subject to limited judicial review and award all remedies available in court, or that Wise will pay all costs unique to arbitration. (*Id.* at pp. 103–104, 106–107, 110–111.) But neither does the agreement expressly withhold or negate any of those elements. Wise concedes that the terms are required and submitted proposed orders recognizing them.[13] If an arbitration agreement covers FEHA claims and is silent as to the minimal elements of fairness required by *Armendariz,* courts will infer

---

[13] Plaintiffs contend that an employer cannot " ' "resuscitate a legally defective contract merely by offering to change it," ' " citing *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 280.) But the contract there had an express term contrary to one required by *Armendariz.* (*Id.* at pp. 279–280.) Here, the court need only infer terms consistent with *Armendariz* on issues as to which the contract is silent.

those terms. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075, fn. 1, 1080–1082 [agreement's silence as to judicial review, scope of remedies, and allocation of costs did not bar enforcement; court could infer requisite terms]; *Armendariz, supra*, 24 Cal.4th at p. 113.)

Thus, there is no basis to conclude that the arbitration agreement suffers from substantive unconscionability, and the court erred in refusing to compel arbitration on this alternative ground.

### DISPOSITION

The order denying defendant Wise Auto Group's motion to sever the complaints of plaintiffs Leroy Iyere, Phillip Derbigny, and Michael Worlow, and to compel each plaintiff individually to submit his claims to arbitration, and awarding plaintiffs attorney fees incurred to oppose the motion is reversed, and the matter is remanded with directions to enter an order granting defendant's motion to compel arbitration in accord with the binding arbitration agreement.


POLLAK, J.[*]


WE CONCUR:

BROWN, Acting P. J.
GOLDMAN, J.

---

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial court:                          Marin County Superior Court

Trial judge:                         Honorable James Chou

Counsel for plaintiffs and respondents:      J. WRIGHT LAW GROUP, P.C.
Jamie Wright, Esq.

Counsel for defendant and appellant:    Laurie E. Sherwood
Mary Watson Fisher